IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DAVID SALZMAN and SONIA SALZMAN,<br><br>                Plaintiffs,<br><br>vs.<br><br>J. THOMAS BOWEN as conservator for TERRY HENDERSON,<br><br>                Defendant. | ORDER and MEMORANDUM DECISION<br><br><br><br>Case No. 2:07-CV-854 CW |

Now before the court is a motion for partial summary judgment brought by Defendant J. Thomas Bowen as conservator for Terry Henderson (hereinafter "Mr. Henderson") (Dkt. No. 93). This Order and Memorandum decision addresses the motion on the claims for breach of the Homeowner's Warranty executed by Mr. Henderson in favor of the Salzmans. As discussed below, this motion is GRANTED in part and DENIED in part.

**BACKGROUND**

This case centers on a property called the Boulders. Many of the facts related to this dispute have been previously set out in the court's decision on the claims for fraud (Dkt. No. 206) and will not be repeated here. For the purposes of this order, the key fact is that Plaintiffs David and Sonia Salzman entered into an contract entitled "Homeowner's Warranty" in November 2004 in which Mr. Henderson agreed to repair or replace items covered by the warranty. A dispute has now arisen in which the Salzmans contend that Mr. Henderson has

breached this contract by refusing to pay for various items.[1] Mr. Henderson responds that he has no obligation to fulfill the contract because the Salzmans breached first, and even if they did not, various items for which the Salzmans seek payment are not covered by the warranty.

At the core of the "Homeowner's Warranty" is Mr. Henderson's promise to the Salzmans to "cover all buildings outbuildings, well, pool, major appliances, sprinkling system, septic system and component parts located on the Property for all material failures or structural defects under normal use and maintenance." (Warranty, Ex. B. to Compl., ¶ 1.) The contract gives Mr. Henderson the "sole discretion to repair or replace any item covered," excusing Mr. Henderson from reimbursing the Salzmans "for the cost of any Warranty work done by Buyer without Seller's prior written authorization" except in certain circumstances. (*Id.*, ¶ 2.) The warranty also lists various exclusions to coverage. The contract covers these repairs for a period of three years.

The Salzmans contend that there are a panoply of problems with the Boulders that are covered by the warranty. In the first few months of the contract, the Salzmans notified Mr. Henderson of various problems, and Mr. Henderson paid for them. At some point, however, Mr. Henderson stopped paying for repairs and the Salzmans took over making and paying for various repairs and changes to the property. The parties dispute the reasons why the Salzmans made the

---

[1] The Salzmans have made two motions to strike certain documents Mr. Henderson filed in support of his motions for summary judgment. (*See* Dkt. Nos. 117 and 134.) Initially, the court notes that Mr. Henderson has made credible arguments on the merits why these documents should not be stricken. Moreover, striking these documents would not change the outcome of this order, nor would doing so have changed the outcome in the court's previous order. Accordingly, these motions are DENIED.

changes. They also do not agree on the contractual ramifications of their actions or on the scope of the coverage of the warranty.

## ANALYSIS

**I.     Summary Judgment Standard**

"Summary judgment is appropriate if the moving party demonstrates that 'there is no genuine issue as to any material fact' and that it is 'entitled to judgment as a matter of law.'" *United States ex rel. Bublaw v. Orenduff*, 548 F.3d 931, 946 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)). Summary judgment must be entered "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Id.* (citation omitted).

In the Tenth Circuit, "the moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (quotations, citations, and alteration omitted). "Even when, as here, the moving party does not have the ultimate burden of persuasion at trial, it has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002) (citation omitted). A moving party may meet this burden "by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Id.* (citation omitted).

When deciding if a nonmovant has proffered evidence sufficient to carry its burden at trial, the court must not weigh the evidence or determine credibility. Instead, "[t]he evidence of

3

the nonmovant is to be believed, and all justifiable inferences are to be drawn in the [nonmovant's] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## II.  Potential Breach by the Salzmans

Mr. Henderson's first argument is that the Salzmans were the first to breach the contract, excusing him from further performance. In support, Mr. Henderson contends that he is not obligated to pay for any replacement or repair for which he did not give "prior written authorization," citing Paragraph 2 of the Homeowner's Warranty. He also argues, citing Paragraph 4 of the Homeowner's Warranty, that the Salzmans are precluded from enforcing the contract because they prevented Mr. Henderson from inspecting the property and making the repairs himself. The Salzmans respond that Mr. Henderson failed to live up to his promise in Paragraph 2 to "promptly address any warranty claims." (Warranty, Ex. B. to Compl., ¶ 2.) They further contend that it was Mr. Henderson's own actions that led them to deny him access and the ability to make the repairs himself.

The court agrees with the Salzmans that the language of the contract and the contested nature of the facts preclude a ruling that the Salzmans were the first to breach. Under Utah law, "[w]hen one party to a contract retains power or sole discretion in an express contract, it must exercise that discretion reasonably and in good faith." *Cook v. Zions First Nat'l Bank*, 919 P .2d 56, 60 (Utah Ct. App. 1996), *cert. denied*, 925 P.2d 963 (Utah 1996). A reasonable jury could examine all the relevant facts in this case and conclude that Mr. Henderson did not exercise his discretion in good faith, excusing the Salzmans from the requirement to obtain his written authorization. A jury could also reject that argument and find that the Salzmans unreasonably denied Mr. Henderson access to the property or otherwise delayed giving notice of the problems

4

about which they now complain. Alternatively, a jury could find that Mr. Henderson failed in his duty to address problems promptly, which might also excuse the Salzmans from the written authorization requirement. Accordingly, there are issues of fact that preclude summary judgment on these issues. Because a trial will be required to resolve this issue, the court is required to address the remaining grounds for summary judgment asserted by Mr. Henderson. The court's discussion on each of this remaining grounds assumes that the jury first finds that the Salzmans' claims are not barred by the first to breach rule.

## III. Scope of Contractual Coverage

Mr. Henderson's second argument is that partial summary judgment should be granted because the contract does not cover certain items for which the Salzmans seek payment either because they are beyond the scope of the covering language or are excluded. To rule on these claims the court must first construe the language of the warranty itself to determine the scope of the coverage Mr. Henderson was required to provide. In construing the contract the court is to give the usual and ordinary meaning to the words used by the parties in the context of the agreement, unless the parties agreed to give the terms a different meaning. There is no evidence in this case that the parties intended anything other than the usual and ordinary usage of the words they chose. Under this standard, the court will address each of these items below.

### A. Irrigation System

Mr. Henderson argues that the Salzmans did not discover or provide timely notice for damages to the irrigation system until 2008, after the contract period expired. Mr. Henderson, however, does not dispute that prior to 2008, the Salzmans raised problems with the system . Instead, he claims that the problems of which he was given notice were repaired. Of course, this

concession raises the factual issue as to whether these asserted repairs completely remedied problems occurring during the contractual period or if the problems of which the Salzmans now complain arose exclusively outside of the time. This is an issue of fact that will require resolution by the jury.

Mr. Henderson also argues that the problems with the system were caused by the elements or by the Salzmans' neglect. The warranty contract excludes damage caused by "wind, rain, freezing, lightning, mischief, [and] neglect." Whether the damages the Salzmans now claim fall within this exclusion, however, is factually disputed. The question of what caused the damages must be resolved by the jury. Accordingly, Henderson's motion is DENIED on this item.

### B. Landscaping

Mr. Henderson argues that he is not liable for the dead trees on the property for two reasons. First, he argues that the contract excludes landscaping. Second, he argues that the dead trees are a consequence of the failed irrigation system and the contract excludes consequential damages. The Salzmans respond that the landscaping exclusion is ambiguous about whether it refers to the noun or the verb, and that the dead trees are the consequence of Mr. Henderson's failure to promptly repair the irrigation system, not the consequence of the failed system in itself.

The court rejects the Salzmans' argument that the term "landscaping" in the exclusion is ambiguous. While it is true that "to landscape" is a verb, when it is used as a gerund, as in this contract, it functions as a noun, referring to the garden that has been "landscaped." In the context of the warranty agreement, the word must refer to the physical manifestation (the "landscaping") that was in place a the time of closing. The obligation "to cover [the listed item]

located on the property for material failures or structural defects" cannot be reasonably construed to obligate Mr. Henderson to undertake work during the warrant period other than to correct problems for the warranted items existing on the property at the time of closing.[2] Those objects necessarily include the plants, shrubs and trees on the property at that time. It would be inconsistent with the obligation affirmatively accepted under the warranty to construe the language to mean Mr. Henderson was excluding from his obligation the requirement to lay out new shrubs, plants and trees. It is clear that the parties agreed that Mr. Henderson was excluding from his warranty the obligation to guaranty that the then existing plants would survive. Thus, the warranty does not extend to cover trees that have died since the Salzmans took possession of the property.

Even absent the exclusion for landscaping, the court finds that a claim for damage from the loss of the trees is barred by the exclusion for "consequential damages caused by the failure of any equipment, structure or system covered by this Warranty." It is undisputed that the trees died due to the failure of the irrigation system, which is a warranty item. As such, this claim falls within the express language and is thus barred. Mr. Henderson's alleged failure to promptly fix the system is a remote cause at best and cannot be a basis for circumventing the expressed intent of the parties to limit Mr. Henderson's obligations. Accordingly, Mr. Henderson's motion is GRANTED on this item.

---

[2] The court recognizes that the parties were not entirely consistent in their use of language. For example, the parties also exclude "snow removal" from the warranty obligation. Nevertheless, when the contract is read as a whole, it is clear that the obligation was as to physical items located on the property at the time of closing.

### C. Wood Rot

Mr. Henderson argues that damage to the decks due to wood rot are excluded because the wood rot was either caused by rain or by the Salzmans' failure to maintain the decks. As noted above, the warranty excludes damage caused by exposure to the elements. There is a factual dispute, however, about whether, assuming proof that there was a failure of the decks, the failure was caused by exposure to the elements before or after the closing, by a failure to properly maintain the decks before or after the closing, or some other cause. The warranty requires Mr. Henderson to pay for the repair if there is a "material failure or a structural defect." A "failure" requires that the covered item be in place at the time of closing and that thereafter it cease to function as intended. Under this provision, an item that was not functioning at the time of closing and continued not to function after closing would not fall under the warranty. The warranty, however, also extends to "structural defects." Thus, if the covered item had a structural defect at the time of closing, Mr. Henderson is required to cover the cost of the repair or replacement. In its ordinary and usual usage a "defect" means "A shortcoming or failing; a fault, blemish, flaw, imperfection (in a person or thing)"[3] or "an imperfection that impairs worth or utility."[4] Thus, a flaw that reduces the utility of the covered item would qualify as a "defect."

Not all defects, however, are covered, but only "structural" defects. "Structural" derives its meaning from the noun "structure," meaning "of or related" to a structure. In this context the dictionary defines "structure" as "Manner of building or construction; the way in which an

---

[3]Oxford English Dictionary, Second Edition, 1989.

[4]Merriam-Webster's Collegiate Dictionary, Eleventh Edition, 2007.

edifice, machine, implement, etc. is made or put together"[5] or as "something (as a building) that is constructed."[6] As the court interprets this language, defects are covered if they are an integral part of the building, in this case the house, including the way it was made or put together. Items placed inside the house, as opposed to items built into or made a part of the structure, are not covered.

Under this meaning, the court interprets the warranty to include the decks and to require Mr. Henderson to repair the decks if any failure was caused by flaws in the wood at the time of closing. Damage caused to the decks because of exposure to the elements after closing, or by a failure of the Salzmans to maintain the decks are not covered defects and properly fall within the exclusion. It will be for the jury to decide if the decks failed and, if it finds the decks failed, what the cause of that failure was. Because of these disputed issues of fact, the motion for summary judgment on this issue must be DENIED.

**D.     Deck Paint**

Mr. Henderson argues that the Salzmans claim upwards of $41,000 in damages to the decks because they were painted with an improper material.[7] Mr. Henderson insists that it is undisputed that the decks were painted with stain which was "one of the best available products to protect wood from the elements." (Henderson's Memo. in Support, Dkt. No. 94, at 11.) The

---

[5]Oxford English Dictionary, Second Edition, 1989.

[6]Merriam-Webster's Collegiate Dictionary, Eleventh Edition, 2007.

[7] Mr. Henderson does not appear to argue that the warranty does not cover Salzmans' claim for damage from the decks allegedly being painted with an improper material. Because Mr. Henderson has not raised that issue in his motion for summary judgment, the court will not address it without further argument from the parties.

Salzmans, however, present testimony from an expert on paints and stains who gives an opinion that the decks were painted with paint, which is evident from the sheen he observed on protective coating on the wood. This evidence is sufficient to created an issue of fact about what material was used to protect the wood. Accordingly, Mr. Henderson's motion is DENIED on this item.

**E.     Siding**

Mr. Henderson asserts that the Salzmans' own witnesses agree that not all of the siding was defective, and therefore he should not have to pay the costs of a full replacement of the siding. The court finds that there is sufficient evidence for the jury to find that the siding was part of the house structure and any defects existing in the siding at the time of close are covered by the warranty. There is also sufficient evidence from which a jury could find that some of the siding was defective. Further, there is a factual dispute about whether a full replacement might have been necessitated by the circumstances. The Salzmans will be required, however, to produce evidence at trial that the damage claimed for repair of the alleged defective siding was reasonable based upon the amount of siding found to be defective, rather than a desire to replace all of the siding because some portion of it was defective. Should the amount claimed for replacing the siding exceed the reasonable cost that would have been required to repair the siding actually found to have been defective, the Salzmans will be barred from recovering the excess amount. Accordingly, Mr. Henderson's motion is DENIED on this item.

**F.     Tyvek Building Wrap**

It is undisputed that the home at the Boulders was not completely covered in Tyvek building wrap when the Salzmans bought it. The evidence is undisputed that portions of the external walls were not wrapped with Tyvek before the siding was installed at the time of the

original construction.  Mr. Henderson did not warrant that the entire external walls had been wrapped with Tyvek.  His warranty extended only the expressly enumerated "Items Covered" and required repair or replacement only for "material failures or structural defects."  Only those items in place at the time of closing are covered.  Improvements and upgrades are not covered.  The failure to cover the entire external walls with Tyvek is not a structural defect.  The house was not constructed with Tyvek covering the entire wall.  It was not a part of the structure at the time of closing and its absence is not a defect.  The failure to wrap the home with Tyvek may have been a poor design choice or a failure to build the house to the best building practices.  But it is not a defect in the existing materials built into the house.  Thus, to prevail on this claim, the Salzmans must prove that there was a "material failure" of the Tyvek.

The Salzmans have not offered evidence from which a jury could reasonably find that any of the Tyvek that had been in place had failed.  The absence of Tyvek in some areas where the Salzmans believe it should have been placed may have been a poor design or poor construction, but it is not a material failure of the Tyvek that was in place.   The Salzmans have not presented evidence from which a jury could conclude that the Tyvek materially failed as the court construes the warranty.  Nor have they shown facts leading to the conclusion that the choice not to completely cover the house in Tyvek was a failure or a defect.  Accordingly, Mr. Henderson's motion is GRANTED on this item.

### G. Stone Veneer

Mr. Henderson argues that he should not have to pay for the work done on the stone veneers.  The Salzmans claim that they were required to replace the entire stone veneer on the outside of the house, claiming that there was a defect in the application of mortar to fasten the

stone to the walls. Mr. Henderson counters that the way the stone veneer was placed was an architectural decision to cause the stone to appear to have been stacked rather than being held together by mortar. He contends that the Salzmans simply decided they preferred a different look and removed and replaced the stone with mortar between the spaces. There is evidence, however, from which a jury could find that the stone veneer had not been properly fastened to the walls and that it failed, requiring repair after the closing. This evidence precludes summary judgment in favor of Mr. Henderson. Nevertheless, the Salzmans will be required to offer evidence from which the jury could conclude that there was a defect or material failure of the veneer. Thus, to recover, the Salzmans will be required to prove that the way the stone was fastened to the walls was a defect, rather then a reasonable design decision, or that the failure of the mortar holding the stones on the walls was a material failure of the mortar. They will also be required to prove that the cost of replacing the entire stone veneer with a different architectural look–stones held together with mortar–was reasonably necessary to repair the stones that were loose. Amounts that were in excess of the amount necessary to repair the loose stones will be excluded from any recoverable damages. These issues, however, are required to be determined by the jury. Accordingly, Mr. Henderson's motion is DENIED on this item.

### H. Damages Caused by Animals or Insects

The Salzmans seek to recover between $100,000 and $700,000 for damage they claim is attributable to animal and insect infestation. The Salzmans claim that sometime after they took possession of the house they discovered that animals and insets had gotten into the walls, ceilings and floors, causing damage to insulation and causing an unbearable stench. They seek the costs of removing and replacing sections of the walls, ceilings and floors to remove the animals and

12

repair the claimed damage. Mr. Henderson argues that the infestation did not arise until after the Salzmans took possession and was caused by the Salzmans' failure to continue proper pest and rodent control. As discussed above, to recover under the warranty the Salzmans must present evidence that the damage was caused by a material failure or a structural defect. Openings or cracks that were flaws in the structure at the time of closing are covered by the warranty and the reasonable cost of repairing or correcting such a flaw is recoverable. Similarly, if a part of the exterior of the house failed for a reason not excluded by the warranty, the reasonable cost of repair is also covered. Nevertheless, damages that are a consequence of such a failure or defect are not covered. The court finds that there is evidence from which a jury could find that at the time of closing there were openings and cracks that may have allowed an animal to get inside a wall and that such openings were a structural defect. The cost of such repairs, but only of such repairs, may be a recoverable item under the warranty.

The Salzmans, however, essentially concede that they claim that the animals and insect infestations were caused by structural defects. Damages caused by the animal infestation, as opposed to the reasonable cost of repairing the defect or failure, are consequential damages and are thus excluded from the warranty. Accordingly, Mr. Henderson's motion is GRANTED to the extent of any damage claimed for this item beyond the reasonable cost of repairing the opening or crack that is claimed to be a defect or to have suffered a material failure. The motion is DENIED to the extent Mr. Henderson seeks to avoid the direct cost of repairing such defects or material failures.

**ORDER**

For the reasons stated above, the court GRANTS in part and DENIES in part Mr. Henderson's motion for partial summary judgment (Dkt. No. 93) as specified above and DENIES the Salzmans' motions to strike (Dkt. Nos. 117 and 134).

SO ORDERED this 13th day of January, 2010.

BY THE COURT:

_____
Clark Waddoups
United States District Judge